# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| LISA THARP, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHWEST BANK,<br><br>Defendant. | No. C24-4001-LTS-KEM<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

This matter is before me on defendant Northwest Bank's motion (Doc. 10) to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiff Lisa Tharp, on behalf of herself and all others similarly situated, has filed a resistance (Doc. 20) and Northwest Bank has filed a reply (Doc. 26). Oral argument is not necessary. *See* Local Rule 7(c).

## II. BACKGROUND

Tharp filed her class action complaint (Doc. 1) on January 10, 2024. She alleges that Northwest Bank unlawfully assesses $32 fees on items in breach of the Terms and Conditions (the Contract) that apply to hers and others' accounts. She brings claims of breach of contract, including the duty of good faith and fair dealing and unjust enrichment.

Tharp alleges this court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a state

different from Northwest Bank. Doc. 1 at 2. She also alleges the number of members of the proposed class in aggregate exceeds 100 accountholders. *Id*.

Tharp specifically challenges Northwest Bank's practice of charging non-sufficient funds (NSF) fees. She alleges the Contract states: "You will be charged an NSF or overdraft fee according to our NSF or overdraft fee policy." *Id*. at 6. The Fee Schedule provides:

> Non-sufficient funds (NSF) return item.................................................................$32.00 each
> A non-sufficient funds item may be created by checks, electronic means (ATM, PC, ACH, etc.) or in-person withdrawal.
> Overdraft (debit or check paid)............................................................................$32.00 each
> An overdraft item may be created by checks, electronic means (ATM, PC, ACH, etc.) or in-person withdrawal.

*Id*. Tharp alleges that the Contract provides for assessment of a singular NSF or overdraft fee on "an overdraft item" or "a non-sufficient funds item." She alleges that in breach of the Contract, Northwest Bank assesses multiple $32 NSF fees on an item or a $32 NSF fee followed by a $32 Overdraft fee on an item if an item is returned for insufficient funds multiple times.

Tharp alleges that on January 22, 2018, she attempted a payment by check number 3400 in the amount of $450.00. *Id*. at 8. Northwest Bank rejected payment of that item and charged a $32 fee. Unbeknownst to Tharp, and without her request that Northwest Bank reprocess the item, on or around February 2, 2018, Northwest Bank rejected the same item again and charged a second $32 fee. This occurred a third time on February 16, 2018, resulting in a total of $96 fees on a single check. *Id*. at 9. Tharp argues this practice breached the Contract as the payment is a single item subject to a singular fee. *Id*. She alleges "[t]he improper fees charged by Defendant were not errors, but rather intentional charges made by Defendant as part of its standard processing of items" and thus she had no duty to report the fees as errors. *Id*.

With respect to the nature of the lawsuit as a class action, Tharp proposes the following class: "All Defendant checking account holders who, during the applicable statute of limitations, were assessed multiple fees on an item by Defendant." *Id*. at 11.

She notes the time period for the class is the number of years immediately preceding the date on which the complaint was filed as allowed by the applicable statute of limitations, going forward into the future until Northwest Bank remedies the alleged conduct. *Id.*

Northwest Bank argues the court lacks subject matter jurisdiction because Tharp has failed to show the amount of damages exceeds $5 million, as required under the Class Action Fairness Act (CAFA). Even if Tharp could make this showing, Northwest Bank argues she otherwise fails to state a claim because the claims are pre-empted and the Contract permits the fees to which Tharp objects.

### III. APPLICABLE STANDARDS

*A. Rule 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for a lack of subject matter jurisdiction. The party invoking federal jurisdiction, carries the burden of establishing that jurisdiction exists. *Jones v. United States,* 727 F.3d 844, 846 (8th Cir. 2013).

Motions under Rule 12(b)(1) may assert a "facial" or "factual" attack on jurisdiction. *Moss v. United States,* 895 F.3d 1091, 1097 (8th Cir. 2018). A facial attack "asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction." *Davis v. Anthony, Inc.,* 886 F.3d 674, 679 (8th Cir. 2018) (citation and internal quotation marks omitted). When considering a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.*

A factual attack "challenges the veracity of the facts underpinning subject matter jurisdiction." *Id.* In evaluating a factual attack, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* When a factual attack is made, "the party invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence." *Moss,* 895, F.3d at 1097. In this case, Northwest Bank raises factual and facial attacks on subject matter jurisdiction.

3

## B.     Rule 12(b)(6)

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual*

4

"plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes," pursuant to Federal Rule of Civil Procedure 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *Id.* These documents include "exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment

5

Case 5:24-cv-04001-LTS-KEM    Document 27    Filed 07/23/24    Page 5 of 17

suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

## IV. DISCUSSION

### A. *CAFA's Amount in Controversy Requirement*

CAFA grants federal district courts original diversity jurisdiction in class action suits if the following requirements are satisfied: (1) the aggregated matter in controversy exceeds the sum or value of $5,000,000; (2) there is diversity of citizenship between at least one plaintiff and one defendant; and (3) there are at least 100 members of the putative class. 28 U.S.C. § 1332(d); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Northwest Bank argues Tharp has not and cannot meet the amount in controversy requirement of $5,000,000 based on her allegations. CAFA "tells the District Court to . . . add[] up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013); *Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018) ("[A] district court aggregates the claims of all named or unnamed persons who fall within the definition of the proposed or certified class.").

With regard to its facial attack, Northwest Bank notes that Tharp alleges total NSF charges of $96. Because she acknowledges that the first $32 NSF fee is allowed under the Contract, she claims she was improperly charged $64 of NSF fees. *See* Doc. 1 at 8-9. She does not identify the amount of NSF fees that other putative class members incurred, but alleges her claims are typical of the class. *Id.* at 4. Given that she alleges a putative class size of thousands (rather than tens of thousands), Northwest Bank argues the complaint alleges, at most, damages in the amount of $639,936 ($64 in damages multiplied by 9,999 plaintiffs). Doc. 10-1 at 4-5.

6

Tharp argues Northwest Bank's facial challenge is based on a hypertechnical reading of the complaint and that "thousands" of putative class members alleged in the complaint easily encompasses any number between 1,000 and 999,999. Doc. 20. She also argues that Northwest Bank does not account for additional sources of damages outside of actual damages, including the monetary value of injunctive, declaratory or other equitable relief requested.

It is Tharp's burden to establish subject matter jurisdiction. *See Westerfeld v. Ind. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) ("Although CAFA expanded federal jurisdiction over class actions, it did not alter the general rule that the party [claiming jurisdiction] bears the burden of establishing federal jurisdiction."). I agree with Tharp that the facial challenge is insufficient to challenge jurisdiction, as an allegation of "thousands" of class members could include up to 999,999 if drawing all reasonable inferences in favor of Tharp. *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (acknowledging the Rule 12(b)(6) standard is followed for facial attacks on subject matter jurisdiction in which the court accepts all of plaintiff's allegations as true and construes all reasonable inferences in plaintiff's favor).

With regard to its factual attack, Northwest Bank relies on the seven-year limitations period, arguing that all alleged damages must arise from NSF fees incurred based on NSF items being presented and returned unpaid multiple times (known as a "representment") that were imposed no earlier than January 10, 2017. *See* Iowa Code § 524.221(2) ("All causes of action . . . against a state bank based upon a claim or claims founded on a written contract . . . shall be deemed to have accrued, and shall accrue for the purpose of the statute of limitations one year after the breach or failure of performance of a written contract, or one year after the date of such entry or entries. No action founded upon such a cause of action may be brought after the expiration of six years from the date of such accrual."). Between 2017 and March 2024, Northwest Bank charged and collected approximately $2,430,000 in total NSF fees. *See* Doc. 10-2. This includes first-time NSF fees and representment NSF fees. *Id.* Northwest Bank notes that

7

representment NSF fees made up approximately 25 percent of all NSF fees charged and collected in the relevant time period, or approximately $611,000. This calculation is based on the average monthly representment fees that could have been charged and collected between September 2023 and March 2024.[1] Based on these numbers, Northwest Bank argues the amount of possible damages is well below the $5 million threshold.

Tharp argues that Northwest Bank's calculations are misleading based they are based on a period after Northwest Bank informally stopped charging representment NSF fees in October 2022. Tharp observes that Northwest Bank fails to provide any support that the average amount of representments between September 2023 and March 2024 is representative of the average amount of representments between 2017 and September 2023, especially given significant economic events during that time period. Tharp argues this data is unreliable to show that she cannot reach the jurisdictional limit.

Northwest Bank argues it is insufficient for Tharp to merely challenge Northwest Bank's evidence without affirmatively putting forth her own evidence to establish jurisdiction. Additionally, Northwest Bank notes that Tharp makes incorrect assumptions regarding Northwest Bank's calculation of representments. Northwest Bank clarifies that it determined the average number of NSF representments and average amount of fees during the relevant time period based on the <u>actual</u> number of NSF representments from September 2023 to March 2024, regardless of whether a fee was imposed. As such, Northwest Bank stands by its calculation, noting that if anything, it is likely inflated given that Northwest Bank stopped charging and collecting representment fees in October 2022.

---

[1] Northwest Bank has submitted an affidavit from its Chief Risk & Audit Officer, noting that starting in October 2022, Northwest Bank created an internal analytics report to help identify represented items by return code and keywords in the transaction, as well as duplicate or repeated check numbers because its system previously did not identify those types of transactions. Then, in August 2023, its system was updated to identify represented items. After this update, Northwest Bank was able to better identify and track represented NSF items within its system. Doc. 10-2 at 1.

Tharp has not rebutted Northwest Bank's evidence, either through her own evidence or successfully challenging the credibility of Northwest Bank's evidence, to establish that her case meets the amount in controversy requirement under CAFA. *See e.g.*, *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010) ("When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof."); *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016) ("In response to a factual attack, Plaintiffs must present 'affidavits or any other evidence necessary to satisfy [their] burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" (quoting *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009))); *Paterson v. Wienberger*, 644 F.2d 521, 523 (5th Cir. 1981) (noting that in response to a factual attack, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction."); *Carter v. Healthport Technologies, LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (explaining that in opposition to a fact-based Rule 12(b)(1) motion, "the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems'").[2] Nor has Tharp asked for time to conduct discovery to establish that she can meet the jurisdictional requirements.

On a factual attack, "no presumptive truthfulness attaches to the plaintiff's allegations." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (quoting *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). As such, Tharp has not established by a preponderance of the evidence that the court has

---

[2] This court noted that plaintiffs are entitled to rely on the allegations in the pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing. *Carter*, 822 F.3d at 57.

9

subject matter jurisdiction.[3] I will consider Northwest Bank's additional arguments to determine whether any other bases for dismissal exist.

## B. *Preemption*

Northwest Bank argues Tharp's state law claims are preempted by the Truth in Savings Act (TISA) and TISA's enabling regulations. TISA and its regulations require banks to provide disclosures that include the "amount of any fee that may be imposed in connection with the account (or an explanation of how the fee will be determined) and the conditions under which the fee may be imposed." 12 C.F.R. § 1030.4(b)(4). "State law requirements that are inconsistent with the requirements of the act and this part are preempted to the extent of the inconsistency." 12 C.F.R. § 1030.1(d). "A state law is inconsistent if it requires a depository institution to make disclosures or take actions that contradict the requirements of federal law." 12 C.F.R. pt. 1030, App. C.

Tharp argues that her claims are not preempted because Iowa's requirements that parties act in accordance with their contractual obligations creates no conflict or inconsistency with TISA's purpose to "enable consumers to make informed decisions about accounts at depository institutions." 12 C.F.R. § 1030.1(b). Tharp argues TISA requires financial institutions to disclose "how the fee will be determined[] and the conditions under which the fee may be imposed." 12 C.F.R. § 1030.4(b)(4). Tharp also argues that her claims do not seek to alter Northwest Bank's fee disclosures, but seek to enforce the disclosures as written. Thus, she contends that they are not preempted on this basis. Northwest Bank points out that Tharp's claims go beyond mere breach of

---

[3] To the extent Tharp relies on the monetary value of injunctive, declaratory or other equitable relief in response to Northwest Bank's factual attack, I agree with Northwest Bank that such value is minimal, if any. First, the declaratory relief has little to no independent value beyond the money damages Tharp seeks. Second, there is little if any value to any injunctive relief that could be imposed as Northwest Bank has already stopped charging and collecting fees on represented NSF items.

contract and allege that Northwest Bank's practices unlawfully violated TISA[4] and misled accountholders.

Both parties cite *Lambert v. Navy Federal Credit Union*, No. 1:19-cv-103, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019). *Lambert* involved claims that a credit union charged multiple NSF fees for multiple attempts to process a single payment in violation of contractual language that only a single NSF fee would be charged. *Lambert*, 2019 WL 3843064, at *1. Defendant argued that plaintiff's claims were preempted under TISA as well as the Federal Credit Union Act (FCUA). *Id.* at *2. On the preemption issue, the court concluded:

> Here, Plaintiff alleges that Navy Federal does not assess fees as disclosed in its contract and that is actual fee assessment practice is unfair. To the extent Plaintiff's claims allege only that Navy Federal has failed to comply with the express terms of the parties' contract or affirmatively misrepresented its fee practices, Plaintiff's claims are not preempted under the affirmative misrepresentation and true breach of contract line of cases. While federal credit unions have the discretion to determine fee practices and disclosures free from state regulation inconsistent with the FCUA, the TISA, and their implementing regulations, federal credit unions must still comply with the terms of their contracts related to fee practices and not affirmatively misrepresent those practices. To the extent Plaintiff challenges a perceived failure to disclose, the specific language used in the disclosure, or the fairness of the fee practice itself, however, those arguments are clearly preempted.

---

[4] Tharp's complaint contains no reference to TISA. In her resistance, she notes that TISA requires banks to disclose "how the fee will be determined[] and the conditions under which the fee may be imposed," *see* 12 C.F.R. § 1030.4(b)(4), and states Northwest Bank "misconstrued in the Contract its true fee practices and breached the express terms of the Contract" by "tak[ing] money out of consumers' accounts without their permission" and "contrary to their reasonable expectations under the Contract." Doc. 20 at 8 (quoting Doc. 1 at ¶¶ 53-54, 74). She argues "[b]y misrepresenting its true fee practices in order to mislead consumers and then assessing fees in a manner consumers cannot anticipate, Defendant inhibits members' ability to obtain the information they need to make informed decisions about their accounts and nullifies TISA's requirement that depository institutions accurately disclose 'how the fee will be determined[] and the conditions under which the fee may be imposed.'" *Id.* At 8-9 (quoting 12 C.F.R. § 1030.4(b)(4)). Tharp concludes Iowa's prohibition on such conduct is entirely consistent with TISA such that her claims are not preempted. *Id.*

*Id.* at *3.

Northwest Bank argues Tharp's claims extend beyond mere breach of contract because she alleges throughout her complaint that Northwest Bank's fee practices are deceptive and unfair. *See* Doc. 1 at ¶¶ 12, 14, 17-18, 20-21, 38, 69, 74, 80, 83, 91. Tharp argues she is not challenging Northwest Bank's disclosures themselves but its practice of assessing NSF fees that is inconsistent with such disclosures. Her complaint makes clear that the alleged deception involves Northwest Bank charging multiple NSF fees, or an NSF fee followed by an overdraft fee on an item, contrary to what is disclosed in its Contract. *See* Doc. 1 at ¶ 12 ("Defendant unlawfully maximizes its already profitable fees through its deceptive and contractually-prohibited practice of charging multiple NSF fees, or an NSF fee followed by an overdraft fee, on an item."); ¶ 13 ("Unbeknownst to consumers, when Defendant reprocesses an electronic payment item, ACH item, or check for payment after it was initially rejected for insufficient funds, Defendant chooses to treat it as a new and unique item that was subject to yet another fee."); ¶ 23 ("In contrast to the Contract, however, Defendant regularly assesses two or more $32 fees on an item."); ¶¶ 26-29 (outlining the terms of the contract, Tharp's interpretation and alleging that "[i]n breach of this promise, Defendant assesses multiple $32 NSF fees on an item or a $32 NSF fee followed by a $32 Overdraft Fee on an item."); ¶ 31 ("There is no indication anywhere in the Contract that the same "item" is eligible to incur multiple fees."); ¶ 34 ("In sum, Defendant promised that one fee would be assessed on an item, and this term must mean all iterations of the same instruction for payment. As such, Defendant breached the Contract when it charged more than one fee per item.").

Tharp is not alleging that Northwest Bank failed to disclose a multiple NSF fee scheme, but that assessing multiple NSF fees is inconsistent with what has been disclosed. While these arguments could be considered two sides of the same coin, I find they are more closely aligned with a breach of contract action than a challenge that could be

12

viewed as inconsistent with the requirements of TISA. As such, I decline to dismiss Tharp's complaint on the basis of preemption.

## C. Failure to State a Claim

Finally, Northwest Bank argues Tharp has failed to state a claim of breach of contract and unjust enrichment under Rule 12(b)(6). Tharp voluntarily withdraws her claim for unjust enrichment. *See* Doc. 20 at 1, n.2. As such, I will address only whether she has sufficiently stated a claim of breach of contract.

Northwest Bank argues Tharp has merely alleged that Northwest Bank followed the Contract's terms. It contends she has failed to identify any part of the Agreement that was breached. To the extent her breach of contract claim encompasses a claim of breach of the covenant of good faith and fair dealing, Northwest Bank argues there cannot be any such breach when a party is enforcing its written contractual rights. Finally, Northwest Bank argues Tharp failed to report the alleged problem within 60 days as required by the Contract.

Tharp argues that Northwest Bank cannot establish that the Contract unambiguously permits the challenged fees. She cites cases in which courts have interpreted similar language in the Contract consistent with her argument that "each" refers to the item and not each time an item is returned. *See* Doc. 20 at 12. She distinguishes cases cited by Northwest Bank and argues the Contract, at best, is ambiguous. Tharp argues she has stated a claim for breach of the implied duty of good faith and fair dealing because no contractual term allows Northwest Bank to charge multiple fees and the implied duty prohibits Northwest Bank from interpreting ambiguous terms to the disadvantage of accountholders. Finally, she argues the 60-day notice provision is inapplicable because the challenged fees are not "errors" as that term is used in the Contract.

Addressing the Contract's 60-day notice first, I agree with Tharp that this provision does not apply to the challenge raised here. The Contract requires

13

accountholders to report "errors or problems" on account statements within 60 days after Northwest Bank "first send[s] or make[s] the statement available." Doc. 1-2 at 5. "Errors or problems" are defined in the Contract as "unauthorized signatures, alterations and forgeries," as well as "any other error – such as an encoding error" or "any unauthorized or missing endorsements." *Id.* As Tharp observes, this provision is clearly directed at fraudulent activity or unintentional inaccuracies rather than alleged knowing and intentional charges pursuant to Northwest Bank's standardized fee practices. The nature of Tharp's complaint does not fall within the required notice period for "errors or problems."

With respect to the substance of this claim, I must accept all the allegations in the complaint as true to determine if Tharp states a claim of breach of contract that is plausible on its face. *See Ashcroft*, 556 U.S. at 678. The parties clearly have differing interpretations of the Contract. Northwest Bank argues the Contract does not expressly state that only a single NSF fee will be charged per item. Tharp argues the Contract provides that Northwest Bank may assess "an NSF or overdraft fee" (singular) "according to our NSF or overdraft policy." Doc. 12 at 3. Northwest Bank points out that the quoted language comes from the following paragraph, which it contends merely notifies accountholders of one specific instance when an NSF fee may be incurred (under facts not alleged here):

> If another transaction is presented for payment in an amount greater than the funds left after the deduction of the temporary hold amount, that transaction will be a nonsufficient funds (NSF) transaction if we do not pay it or an overdraft transaction if we do pay it. You will be charged an NSF or overdraft fee according to our NSF or overdraft fee policy. You will be charged the fee even if you would have had sufficient funds in your account if the amount of the hold had been equal to the amount of your purchase.

Doc. 1-2 at 3. This provision is under the heading: "Temporary Debit Authorization Hold Affects Your Account Balance." *Id.*

Tharp's complaint also seems to include a theory of breach based on the word "item" in the fee schedule:

> 30. The same "item" on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when – as here – Plaintiff took no action to resubmit it.
>
> 31. There is no indication anywhere in the Contract that the same "item" is eligible to incur multiple fees.
>
> 32. Even if Defendant reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.
>
> 33. Defendant and its customers never agreed that Defendant may assess multiple fees for a single check, ATM withdrawal, PC, ACH, in-person withdrawal, or other electronic payment item that was returned for insufficient funds and later reprocessed one or more times and returned again.
>
> 34. In sum, Defendant promised that one fee would be assessed on an item, and this term must mean all iterations of the same instruction for payment. As such, Defendant breached the Contract when it charged more than one fee per item.
>
> 35. Reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in the Contract.
>
> 36. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same item will be treated as the same "item," which Defendant will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere do Defendant and its customers agree that Defendant will treat each reprocessing of a check, electronic payment item, or ACH item as a separate item, subject to additional fees.
>
> 37. Customers reasonably understand, based on the language of the Contract, that Defendant's reprocessing of checks, electronic payment items, and ACH items are simply additional attempts to complete the

> original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item.

Doc. 1 at 7-8. Northwest Bank argues that to the extent Tharp argues that "return item" under the Contract means that fees cannot be imposed based on a merchant's request for payment (as opposed to the account holder's), such interpretation is unreasonable. *See* Doc. 26 at 14-15 (citing *Winamaki v. Umpqua Bank*, 521 P.3d 846, 849-50 (Or. Ct. App. 2022).

I do not agree that Tharp's claim, as currently pleaded, is limited to an argument that each item must be initiated by the account holder. While that may be part of her argument, she also alleges that "[e]ven if Defendant reprocesses an instruction for payment, it is still the same 'item'," *see* Doc. 1 at ¶ 32, and "Defendant promised that one fee would be assessed on an item, and this term must mean all iterations of the same instruction for payment." Doc. 1 at ¶ 34. Tharp focuses less on who initiates the payment and more on the reprocessing of a single instruction for payment, regardless of whether the merchant or account holder is requesting it. In the simplest terms, Tharp alleges Northwest Bank has breached the Contract because it promised that one fee would be assessed per item but charged more than one fee per item. *See* Doc. 1 at ¶¶ 26-34. She has sufficiently stated a claim of breach of contract.[5] Northwest Bank is not entitled to dismissal based on Rule 12(b)(6).

## V. CONCLUSION

For the reasons set forth herein, Northwest Bank's motion (Doc. 10) to dismiss for lack of subject matter jurisdiction is **granted** pursuant to Federal Rule of Civil Procedure 12(b)(1) based on Tharp's failure to establish that the amount in controversy

---

[5] Because Tharp's argument of good faith and fair dealing is part of her breach of contract claim and I find that claim survives a challenge under Rule 12(b)(6), I find no reason to discuss whether that aspect of the claim is separately sufficient as it is not a separate claim.

exceeds $5 million, as required by the Class Action Fairness Act. This case is **dismissed without prejudice**.

IT IS SO ORDERED this 23rd day of July, 2024.

_____
Leonard T. Strand
United States District Judge